IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DOUGLAS HOLLOWAY, and** <br> **RITA HOLLOWAY,** <br><br> Plaintiffs, <br><br> v. <br><br> **MONACO COACH CORPORATION,** <br> a corporation of the State of Delaware, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No.: 05-740 JJF <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS**

**Definitions:** For the purposes of all requests for admission, the terms "Automobile" and "Condition" have the same meaning as defined in the Complaint initiating this litigation; "Lemon Law" means the "Delaware Automobile Warranties" Act, 6 *Del. C.*, Chapter 55; Elder Victims Enhanced Penalties Act means the "Enhanced Penalties when Elder or Disabled Person Targeted" Act, 6 Del. C. §§2580-2583.

Plaintiffs request that the Defendant within 30 days after service of this request, make the following admissions for the purpose of this action only:

1. The Automobile which is the subject of this litigation, was included in recall campaign ID# 05V223000 by order of the National Highway Traffic Safety Administration, which stated "Summary: On certain Class A Motor Homes equipped with vehicle systems' Aqua-Hot and Hydro-Hot water heaters, which use Webasto burner tubes, do not meet specifications and could fail prematurely. Consequence: The surface temperature of the exhaust tube exiting from the heater can increase and could potentially ignite combustible materials in or around the vehicle."

**ANSWER:**

2. The Automobile is affected by this Recall, and experienced the overheating

described.

**ANSWER:**

### "Lemon Law" Requests for Admission

3. Plaintiffs are "Consumers" within the meaning of the Delaware's "Automobile Warranties" Statute, Title 6, Delaware Code, Chapter 50, (hereinafter the "Lemon Law"), Section 5001(1).

**ANSWER:**

4. Plaintiffs' new 2004 Monaco/Beaver Monterey Laguna luxury motor home automobile, serial number 1RFC2564541029131 is an "automobile" within the meaning of the Lemon Law, Section 5001(5).

**ANSWER:**

5. Plaintiffs purchased the 2004 Monaco/Beaver Monterey Laguna luxury motor home automobile, serial number 1RFC2564541029131 (hereinafter the "Automobile") "new" and "for purposes other than resale" within the meaning of the Lemon Law, Sections 5001(1) and 5002.

**ANSWER:**

6. Plaintiffs are the persons entitled by the terms of the manufacturer's express written warranty (hereinafter the "Warranty") applying to the Automobile to enforce the obligations of the warranty, within the meaning of the Lemon Law, Section 5001(1).

**ANSWER:**

7. Plaintiffs are the persons to whom the Automobile was transferred during the duration of an express Warranty applicable to the Automobile, within the meaning of the Lemon Law, Section 5001(1).

**ANSWER:**

8. LazyDays is a "Dealer" within the meaning of the Lemon Law, Section 5001(2).

**ANSWER:**

9. LazyDays is a corporate person actively engaged in the business of buying, selling or exchanging automobiles at retail and who has an established place of business, within the meaning of the Lemon Law, Section 5001(2).

**ANSWER:**

10. Defendant Monaco Coach Corporation, (hereinafter "Monaco") is a "Manufacturer" within the meaning of the Lemon Law, Section 5001(3).

**ANSWER:**

11. Defendant Monaco is engaged in the business of manufacturing, assembling or distributing automobiles, and will, under normal business conditions during the year, manufacture, assemble or distribute to dealers at least 10 new automobiles, within the meaning of the Lemon Law, Section 5001(3).

**ANSWER:**

12. Defendant Monaco's warranty, Exhibit 9 of Plaintiff's Exhibits dated August16, 2005, is the "Manufacturer's Express Warranty" or "Warranty," within the meaning of the Lemon Law, Section 5001(4).

**ANSWER:**

13. Defendant Monaco's warranty, Exhibit 9 of Plaintiff's Exhibits dated August16, 2005, is the written warranty of the manufacturer of the Automobile, of its condition and fitness for use, including any terms or conditions precedent to the enforcement of obligations under that warranty, within the meaning of the Lemon Law, Section 5001(4).

**ANSWER:**

14. Plaintiffs' Automobile, except the living facilities of the motor home, is a passenger motor vehicle, which was registered by the Division of Motor Vehicles in the Delaware Department of Public Safety, within the meaning of the Lemon Law, Section 5001(5).

**ANSWER:**

15. The Automobile experienced the following conditions:

- The fuel tanks overflowed due to improper filler tubes, splashing diesel fuel onto the Automobile and ground.
- The diesel powered generator blew diesel fuel onto its exhaust pipes, creating clouds of vaporized diesel fuel, visible even during normal driving, that made the Automobile appear to be on fire.
- The roof leaked water persistently, so that on using the brake for the first time after a

  rain, two quarts of water would run down the interior of the windshield, onto the dash, and into the area where electronics and gauges are housed, some of which malfunctioned.

- The body sidewalls leaked water into the Automobile, especially at the slide-outs, and elsewhere.
- The Hydro-Hot heating system was improperly or defectively installed, and burned and melted its interior burner.

**ANSWER:**


16. The conditions described in the previous Request for Admission constitute a "nonconformity" (hereinafter the "Nonconformity") within the meaning of the Lemon Law, Section 5001(6).

**ANSWER:**


17. The Nonconformity in the Plaintiffs' Automobile constitutes a defect or condition which substantially impairs the use, value, or safety of the Plaintiffs' Automobile, within the meaning of the Lemon Law, Sections, 5001(6) and 5006.

**ANSWER:**


18. The Nonconformity in the Plaintiffs' Automobile is not the result of abuse or neglect or of unauthorized modifications or alterations of the Plaintiffs' Automobile by anyone other than the Manufacturer, its agent or dealer, within the meaning of the Lemon Law, Section 5006.

**ANSWER:**

19. Because of the Nonconformity, the Plaintiffs' Automobile does not conform to the Manufacturer's written Warranty within the meaning of the Lemon Law, Section 5002.

**ANSWER:**

20. Plaintiffs reported the Nonconformity to Defendant Monaco or its agent or Dealer, LazyDays, during the term of the Warranty, or during the period of 1 year following the date of original delivery of the Automobile to the Plaintiff, within the meaning of Sections 5002, 5004, of the Lemon Law.

**ANSWER:**

21. Defendant Monaco did not conform the Plaintiffs' Automobile to the Warranty in a "reasonable period of time" or a "reasonable number of attempts," within the meaning of the Lemon Law, Sections 5002, 5003 and 5004.

**ANSWER:**

22. Defendant Monaco did not correct the Nonconformity during the first year after delivery of the Automobile to the Plaintiffs, or in four repair attempts, within the meaning of the Lemon Law Sections 5002 and 5004(a)(1).

**ANSWER:**

23. Defendant Monaco did not correct the Nonconformity during the first year after delivery of the Automobile to the Plaintiffs, or in a cumulative total of more than 30 calendar days beginning the first day the Plaintiffs presented the Automobile and a written document describing the Nonconformity was prepared by Monaco, its agent or LazyDays or dealer,

within the meaning of the Lemon Law Section 5004(a)(2).

**ANSWER:**

24. Defendant Monaco received prior direct written notification from or on behalf of the Plaintiffs and has had an opportunity to repair or correct the Nonconformity, within the meaning of the Lemon Law, section 5004(b).

**ANSWER:**

25. Defendant LazyDays provided written notification of the Nonconformity to Monaco through warranty repair documentation.

**ANSWER:**

26. Defendant Monaco had a reasonable opportunity to repair Plaintiffs' Automobile through LazyDays, its authorized Dealer and LazyDays's factory trained mechanics.

**ANSWER:**

27. Defendant Monaco owed Plaintiffs, a mandatory, affirmative duty to make, or arrange with its Dealer or agent to make, in four repair attempts or 30 cumulative days during the first year after delivery to the Plaintiffs, all repairs necessary to conform the new Automobile to the Warranty, within the meaning of Sections 5002, 5003, and 5004 of the Lemon Law.

**ANSWER:**

28. Defendant Monaco breached the mandatory, affirmative duty owed to Plaintiffs to

make, or arrange with its Dealer or agent to make, in four repair attempts or 30 cumulative days during the first year after delivery to the Plaintiff, all repairs necessary to conform the new Automobile to the Warranty, within the meaning of Sections 5002, 5003, and 5004 of the Lemon Law.

**ANSWER:**

29. Defendant Monaco breached the Lemon Law applied to Plaintiffs' Automobile.

**ANSWER:**

30. Plaintiffs requested that Defendant Monaco comply with the Lemon Law and either replace the Automobile with a comparable new automobile acceptable to the Plaintiffs or repurchase the Automobile from the Plaintiffs and refund the full purchase price, including all credits and allowances for any trade-in vehicle, less a "reasonable allowance for use," within the meaning of the Lemon Law, Section 5003.

**ANSWER:**

31. Defendant Monaco did not honor Plaintiffs' demand under the Lemon Law and either replace the Automobile with a comparable new automobile acceptable to the Plaintiffs or repurchase the Automobile from the Plaintiffs and refund the full purchase price, including all credits and allowances for any trade-in vehicle, less a "reasonable allowance for use," within the meaning of the Lemon Law, Section 5003.

**ANSWER:**

32. Plaintiffs' Lemon Law lawsuit was not brought in bad faith and is not frivolous in nature, within the meaning of the Lemon Law, Section 5005.

**ANSWER:**

33. Defendant Monaco does not have an informal settlement procedure that has approval by the Division of Consumer Protection, Delaware Department of Justice within the meaning of Lemon Law Section 5007.

**ANSWER:**

34. Defendant Monaco's breach of the Lemon Law is, as a matter of law, an unlawful practice as defined in §2513 of Title 6 of the Delaware Code, and as a result, is a *per se* violation of the Delaware Consumer Fraud Act, pursuant to Section 5009 of the Delaware Lemon Law.

**ANSWER:**

35. The full purchase price of the Plaintiffs' Automobile on February 10, 2004, the date of purchase was $267,730.00, within the meaning of the Lemon Law, Section 5003(a), (c).

**ANSWER:**

36. Plaintiffs paid the full purchase price to Defendants.

**ANSWER:**

37. The Amortization Schedule, pages 3-8 of Exhibit 25 of Plaintiff's Exhibits dated August16, 2005, correctly calculates and states the cumulative interest paid by the Plaintiffs for

each month of their loan according to their loan contract.

**ANSWER:**


38. Finance charges on the loan to purchase Plaintiffs' Automobile are recoverable by the Plaintiffs, as part of the purchase price.

**ANSWER:**


39. Plaintiffs paid out of pocket expenses totaling by August 16, 2005, $12,299.53 as a result of the Nonconformity, as detailed at pages 1-2 of Exhibit 25 of Plaintiff's Exhibits dated August16, 2005, and Plaintiffs are entitled to recover this sum.

**ANSWER:**


40. The Federal Discount rate on the day of the tender of delivery of the Automobile to the Plaintiffs, February 10, 2004 was 0.99%.

**ANSWER:**


41. Prejudgment interest is recoverable by the Plaintiffs on their calculable damages at 5% above the Federal Discount Rate, on the day of accrual of their causes of action, pursuant to 6 *Del. C*. §2301 and decisions of the courts of Delaware.

**ANSWER:**


42. The court action in this case was brought under the Lemon Law by the Plaintiffs against Monaco, the manufacturer of the Automobile and is based upon the alleged breach of an

express warranty made in the connection with the sale of the Automobile. Therefore the court may award to the Plaintiffs their costs and reasonable attorney's fees, within the meaning of the Lemon Law, Section 5005.

**ANSWER:**


43. The documents included in "Plaintiff's Exhibits" dated August16, 2005, tabs 1-10, 11-25, are true and accurate copies, authentic, relevant and admissible.

**ANSWER:**


### Elder Victims Act Request for Admissions

44. Plaintiffs suffered damages or injury as a result of a violation of the Lemon Law, 6 *Del. C*. Chapter 55, within the meaning of the Elder Victims Enhanced Penalties Act, 25 *Del. C.* Chapter 25, Subchapter VIII, §2583.

**ANSWER:**

45. Violation of the Lemon Law is, as a matter of law, an unlawful practice as defined in §2513 of Title 6, Chapter 25 of the Delaware Code, and as a result, a *per se* violation of the Delaware Consumer Fraud Act, pursuant to 6 *Del. C.* § 5009 of the Delaware Lemon Law.

**ANSWER:**


46. Plaintiff Rita Holloway was a person 65 years of age, or older when the violation of the Lemon Law occurred, within the meaning of The Elder Victims Enhanced Penalties Act, 6 *Del. C.* Chapter 25, Subchapter VIII, §§2581, 2583.

**ANSWER:**

47.  Plaintiff Rita Holloway is entitled to there times her compensatory damages in addition to her any other damages to which she is entitled pursuant to common law or other provisions of the Delaware Code, within the meaning of The Elder Victims Enhanced Penalties Act, 6 *Del. C.* Chapter 25, Subchapter VIII, §2583.

                                        **ERISMAN & CURTIN**

                                        **/s/Christopher J. Curtin**
                                        Christopher J. Curtin
                                        I.D. No.  226
                                        629 Mount Lebanon Rd.
                                        P.O. Box 250
                                        Wilmington, DE 19899
                                        (302) 478-5577
                                        Attorney for Plaintiffs

DATED: February 14, 2006