IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOUGLAS HOLLOWAY,<br>and RITA HOLLOWAY<br><br>Plaintiffs,<br><br>v.<br><br>MONACO COACH CORPORATION<br>a corporation of the State of Delaware,<br><br>Defendants. | )<br>)<br>) C.A. No.: 05-740 JJF<br>)<br>) <u>NON-ARBITRATION CASE</u><br>)<br>) TRIAL BY JURY DEMANDED<br>)<br>)<br>)<br>) |

APPENDIX
TO
PLAINTIFFS' OPENING BRIEF ON
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ERISMAN & CURTIN
Christopher J. Curtin
DE Bar I.D. No." 226
629 Mount Lebanon Rd.
P.O. Box 250
Wilmington, DE 19899
Tel.: 302 478-5577
Fax: 302-478-5494
EMail: ccurtin659@aol.com
Attorney for Plaintiffs

Dated: August 18, 2006

## CONTENTS

Page

1. Notice Letter ................................................................. 1

### 2001 COACH

2. Settlement Agreement for 2001 Coach ...................................... 17
3. Summary of Damages, 2001 Coach .......................................... 28

### 2004 COACH

4. Sales Invoice .............................................................. 31
5. Retail Installment Contract ................................................ 34
6. Miscellaneous Sales Documents ............................................ 40
7. Lazydays Web Pages ....................................................... 45
8. Beaver Monterey Brochure Extract ......................................... 53
9. 2004 Owners Manual and Warranty ......................................... 67
10. Hydro-hot Warranty and Owner's Manual .................................. 107
11. Chronological Summary of Repair Opportunities/ Repair Invoices: ............. 111
        12. Repair Invoice Dated: 2-4-04 to 6-2-04 ...................... 127
        13. Repair Invoice Dated: 3-29-04 to 4-29-04 ................... 130
        14. Repair Invoice Dated: 5-4-04 to 6-8-04 ..................... 146
        15. Repair Invoice Dated: 5-4-04 to 5-21-04 .................... 160
        16. Repair Invoice Dated: 7-4-04 to 9-30-04 .................... 162
        17. Repair Invoice Dated: 7-4-04 to 8-24-04 .................... 174
        18. Repair Invoice Dated: 10-7-04 to 1-19-05 ................... 178
        19. Repair Invoice Dated: 10-7-04 to 12-15-04 .................. 193
        20. Repair Invoice Dated: 2-8-05 .............................. 197
        21. Repair Invoice Dated: 7-5-05 .............................. 201
        22. Repair Invoice Dated: 1-30-06 ............................. 203
        23. Repair Invoice Dated: 3-7-06 .............................. 217
24. Notice to and Correspondence from Monaco ................................ 221
25. Aggravation and Inconvenience ........................................... 224
26. Monaco's Monterey Hydro-Hot Recall Notice ............................... 231
27. Summary of Damages ..................................................... 233
28. Delaware Lemon Law ..................................................... 248
29. Delaware Elder Victim Enhanced Penalties Act ............................. 253
30. Letter dated March 17, 2006 to Monaco, Re: Warranty Limitation ............. 257
31. Excerpt from Report of Defense Expert David Stivers ........................ 267
32. Monaco Warranty Claim History ........................................... 271
33. Monaco Warranty Authorization Lookup ................................... 295
34. Report of Wayne Degen, General Manger, Media Camping Center .............. 306
35. Affidavit of Douglas Holloway ............................................ 310

# 1. Notice Letter

A 00001

**ERISMAN & CURTIN**

Christopher J. Curtin
629 Mt. Lebanon Road
Wilmington, DE 19803

Attorneys at Law
P. O. Box 250
Wilmington, Delaware 19899

David H. Erisman
Of Counsel

Telephone (302) 478-5577
Telefax (302) 478-5494
E-Mail: CCurtin659@aol.com

August 16, 2005

Cyndi Edgett
Monaco Coach Corporation
91320 Coburg Industrial Way
Coburg, OR  97408-9305

**RE: Holloway v. Monaco Coach Corp. II**
**Automobile:  2004 Monaco/Beaver Monterey Motor Home**
**VIN: 1RFC2564541029131**
**Date of Purchase: January 10, 2004**

Dear Ms. Edgett:

I represent Douglas and Rita Holloway, who, as you know accepted transfer of a defective 2004 Monaco/Beaver Monterey Motor Coach, (hereinafter, the "Automobile") as part of the settlement of their lemon Law case concerning their 2001 Beaver Monterey. The Automobile was out of service over 270 days during the first year, for or awaiting repair of fuel leaking onto the manifold; fuel gushing out at filling; water from the roof leaking into cabin and cargo areas; water damage and unsightly interior roof headliner repair. These conditions substantially impair the use, value, and safety of the Automobile and constitute violations of the warranty. These conditions were subject to repair five times and, unfortunately, the Automobile is worsening. The Hydro-Hot system was installed improperly, and the burner melted critical parts.

Mr. & Mrs. Holloway lost all confidence in the Automobile and the ability of Monaco to repair it. They previously revoked acceptance of the Automobile pursuant to the Uniform Commercial Code and Delaware's Lemon Law, 6 *Del. C.* Ch. 50 in December, 2004. We demand refund of the full purchase price, out of pocket expenses, prejudgment interest, damages for aggravation and inconvenience, and attorney's fees pursuant to the "Lemon Law," the Uniform Commercial Code, and other Delaware statutes; and the Magnuson Moss Warranty Improvements Act, 15 *U.S.C.* §2310(d).  Treble damages will be sought as explained below.

We demand that Monaco accept return of the Automobile, without reporting adverse credit information and pay damages, plus attorneys fees and costs, as detailed on the enclosed Summary of Damages. Exhibit 25.  As you can see from the citations supporting each item,

A 00002

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 2

damages are substantial and will only continue to grow over time.

Mr. & Mrs. Holloway will retain the Automobile until we receive your instructions concerning its disposition or until their money is returned. Please advise us immediately of your instructions for the disposition of the Automobile.

### Monaco Must Repurchase the Automobile Under the Delaware Lemon Law.

As you know, under the Delaware Lemon Law, the manufacturer owes a duty to cure a nonconformity in a "reasonable period of time" or a "reasonable number of attempts." 6 *Del. C.* §§5002-5003. If an Automobile is unrepaired after four attempts, or out of service for, or awaiting repairs for more than thirty days during the first year, the purchaser is entitled to a refund of the purchase price, less a reasonable allowance for use. 6 *Del. C.* §5003(b). I enclose a copy of the Delaware Lemon Law for your review. Exhibit 26. This substandard Automobile has been out of service for or awaiting repairs far longer than the statutory period.

### Delaware Law Applies.

It is clear that the Delaware Lemon Law applies to the Automobile, even though it was transferred[1] to them in Florida. The Delaware Lemon Law defines: "Automobile" to mean "any passenger motor vehicle ... which is ... **registered by the Division of Motor Vehicles in the Department of Public Safety except the living facilities of motor homes.**" 6 *Del. C.* §5001(5) emphasis added. This section makes it clear that the Lemon Law: 1.) covers automobiles purchased out-of-state but registered in Delaware. *Holloway v. Monaco Coach Corp.,* WL 21146720 (D.Del. May 14, 2003)*; Harmon v. Concord Volkswagen, Inc.*, 598 A.2d 696 (Del. Super. 1991); and 2.) covers motor homes, other than the living facilities. Since the problems with the Holloway's Automobile is the fuel and leaking into the driving compartment, it is covered by the Delaware Lemon Law. Moreover, the conditions all violate the warranty, and are covered by the Uniform Commercial Code and the Federal Magnuson Moss Consumer Warranty Act.

### The Lemon Law's Presumption Applies.

From the date of transfer and during the first year, the Automobile has been subject to repair 270+ days for, *inter alia*, dangerous fuel overflow and generator fuel blow-by contacting the exhaust system. This Condition resulted in at least one emergency maneuver when smoke

---

[1]The Holloways are "consumers" under the lemon Law, since they are each "a person to whom an automobile is *transferred* during the duration of an express warranty applicable to the automobile..." 6 *Del.C.* §5001(1)

A 00003

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 3

billowed so thick from the Automobile that passing motorists called it to the attention of the Holloways, and they were forced to pull over immediately and attend to the immanent risk of a fuel fire. The Automobile has also been subject to repair for extensive water leakage and resulting damage from the roof leaks, and slide-outs, so that for example roughly 2 quarts of water poured on the inside of the windshield on first use of the brakes after a rain.

In one repair visit, from May 4, 2004 to June 8, 2004, the Automobile was in the shop for 36 days. From July 7, 2004 to September 30, 2004, the Automobile was out of service for 86 days, while from October 10, 2004 to January 19, 2005, the Automobile was subject to repair by Monaco's own technicians for at least 75 days (105 days according to the Repair Invoice.) The extensive repairs without charge evidence the seriousness of the problems and that they are warranty problems. Consequently, the presumption created by the Lemon Law that Monaco had a "reasonable opportunity to repair" the Automobile, applies in this case.

## The Condition Violates the Express Warranty.

There can be little doubt that a condition that results in diesel fuel being splashed out copiously during filling is a safety hazard. Moreover, the generator blowing oil onto the exhaust pipe and resulting in a flammable cloud of fuel-smoke, is likewise, obviously a substantial impairment to the use, value, and safety of the Automobile. A persistent leak of fuel is a substantial impairment to the use, value, or safety of an automobile. *Safari Motor Coaches, Inc., v. Corwin*, 638 N.Y.S. 2d 992 (N.Y. App. Div. 1992), Sheldon & Carter, *Consumer Warranty Law*, (2nd ed. 2001and 2004 cum. supp.) §13.2.4.4.3.

The persistent strong odor of diesel fuel in the driver compartment, is also a substantial impairment to the use, value, and safety of the Automobile. Courts consistently hold that a foul smell in a new car is a breach of the manufacturer's express written warranty, justifying revocation of acceptance under the Uniform Commercial Code. Sheldon & Carter, *Consumer Warranty Law, supra.*, §13.2.4.4.3, state *"Odors*. A Washington Court held that an odor of diesel fuel in a carpeted storage area of a motor home was a 'substantial impairment.' *Moobery v. Magnum Mfg., Inc.*, 32 P. 3d 302, (Wash. App. 2001); *see also Lundy v. Ford Motor Co.*, 104 Cal. Rptr 2d 545 (Cal. App. 2001) (whether odor was substantial impairment was a jury question.)"

It is clear that water leaking into the passenger compartment of an automobile substantially impairs the use, value, or safety of the Automobile. In *Beal v. Volkswagen of America, Inc.*, 1987 WL 642748 (Del.Com.Pl. Mar 25, 1987), a Delaware court held that a leak that allowed water to enter the passenger compartment during some rain storms substantially impaired the value of the vehicle. Water leaking into the passenger compartment of a passenger automobile was also judicially recognized to constitute a breach of warranty, justifying cancellation of the sale and other damages in *Charney v. Ocean Pontiac, Inc.*, 17 U.C.C. Rep.

A00004

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 4

982 (Mass. Dist. Ct. 1975). Sheldon & Carter, *supra.*, note that "Water leaks into the living quarters of a motor home substantially impair the vehicle." *Barker v. Fleetwood Enterprises, Inc.*, 2002 WL45391 (Cal. Ct. App. Mar. 26, 3003; *Lesjack v. Forest River, Inc.*, 2003 WL 22861722 (Ohio Ct. App. Nov. 26, 2003).

A court or jury will not have any question that the Condition is a substantial impairment to the use, value, or safety of the Automobile. Moreover, since the Automobile is a luxury vehicle, it will be held to a higher standard. Sheldon & Carter, *Consumer Warranty Law*, (2nd ed. 2001 and 2004 cum. supp.) §13.2.4.4.1:

> "Courts may be willing to hold luxury cars to a higher standard because the buyer's expectations are justifiably higher. *Milicevic v. Mercedes-Benz, U.S.A. Ltd. Liab.* Co., 256 F. Supp. 2d 1168 (D. Nev. 2003).

***

> "Each year vendors of automobiles spend millions of dollars to persuade potential customers to purchase their products. Purchasers are told that if they purchase a particular brand of type of vehicle they will achieve newfound happiness and peace of mind in the knowledge that their vehicle is of superior quality, safety and styling. Great expectations are created and reinforced to persuade the customer to part with his money to make the purchase. In view of this, it is not unreasonable to require the vendor to deliver all or substantially all of that which has been promised." *Capitol Cadillac Olds, Inc. v. Roberts*, 831 S.W. 2d 287 (Ky. 1991).

Monaco, is among those automobiles that create and will be held to higher expectations. See the references to "luxury" "superior quality" etc., in Exhibit 8. In the Holloway's case, it is clear.

The following extract from the Chronology, Exhibit 11., summarizes the available repair invoices gives the extent of the problems and length of repairs for the Automobile.

| Date | Miles | Complaint | Comment | Source |
|------|-------|-----------|---------|--------|
| 1-10-04 | 3,423 | Date of Purchase | | Buyers Order |
| 2-4-04 to 6-2-04 | 3,435 | A. Maxi Air vent Cover<br>C. Fabricate and install Slide tray | A. Install Fan vent cover | RO# 21380<br>Ex. 12 |

A 00005

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 5

| 3-29-04 to 4-29-04 (31 days) | 3,436 | A. Install Satellite receiver<br>M. Bedroom slide out has gap when out<br>S-AT Body and paint repairs | M. Seal not making full contact: Add ½ inch seal to lower rear corner | RO# 28093 Ex.13 |
|---|---|---|---|---|
| 5-4-04 to 6-8-04 (36 days) | 8,553 | **A. Cust States Diesel Fuel leaking from top of Fuel tank.**<br>C. **Water leaking** between entry door and Screen door from top<br>D. Driver's side bedroom slide out **leaks onto carpet** at side of bed between bed and bath with slide out, in.<br>**F. Bad water leak into all passenger's side storage compartments. Carpet is soaked.**<br>M. **Water leaking on both pass., and driver's sides of Living room, wetting ceiling carpet.**<br>N. Needs **stains from water** removed from living room ceiling.<br>O. Wooden ceiling trim strips **warping from water leak** onto ceiling carpet.<br>P. **Diesel fumes in coach after filling tank, also hard to get tank to fill, pops back through tube.** | A. ... fuel is coming from the vent which is at the top of the tank.<br>C. Seal at the top of the door was cut and left a gap.<br>D. Checked the slide and found the seal had a big hole at the top. Sealed it up. This would leak when in and out.<br>F. Frames not sealed. ... Also the tops of the doors had holes in them.<br>M. Checked the roof A/C and the bolts were loose.<br>N. No repair<br>O. No repair made.<br>P. Same as Job A. | RO# 32303 Ex. 14 |
| 5-4-04 to 6-8-04 (36 days) (Cont.) | 8,553 | R. **Water leaking from dinette window** to inside of coach in hard rain. Water stands in bottom of window frame.<br>S. **Water leaking into coach** from driver's side couch window. Water stands in bottom of frame. | R. No repair per F. Gilleeny. Ran water in the window troft and drains good.<br>S. No job per F. Gilleeny. Ran water in the window troft and drained good. | 32303 (Cont.) |

A 00006

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 6

| 7-7-04 to 9-30-04 (86 days) | 14,493 | A. **Bad fuel leak, leaks onto gen and gen exhaust, and also along length of coach.**<br>B. **Very hard to fill tank from either fuel fill, particularly on driver's side.**<br>C. Passenger side living room **slide out has poor fit and seal** to body at bottom rear corner when closed.<br>D. Passenger side narrow **storage compartment still fills with water.**<br>E. **Carpet in #5 storage compt' on pass side is ruined from mildew.** | A. ... found fill pipes leaking at tank, ... Found vent tube leaking...<br><br>B. Shortened fill tubes....<br><br>C. Lower rear corner sticking in at rear. ...<br><br><br>D. ...found the weatherstrip was not sealing from the lip on the compartment....<br>E. Door not sealed.... | RO# 38623 Ex. 16 |
| 7-7-04 to 9-30-04 (86 days) (Cont.) | 14,493 | Q. Oil pressure gauge on dash stuck at zero. Aladdin shows 55lbs.<br>R. Driver's side living room ceiling, at area of slide out, has **stained ceiling from water leak.**<br>S. Passenger side living room ceiling, at center near wooden molding, being **stained from water leaks.**<br>T. Bedroom ceiling near A.C. outlet **stained from continuing water leaks.**<br>U. All **ceiling stains to be cleaned or fabric replaced.**<br>Y. Front roof AC will not come on.<br>Z. Shower light inop.<br>AA. Oil gauge on dash does not move with engine running. Aladdin is only means of checking | Q. Bad sender... found the sending unit for the oil pressure gauge was bad...<br><br>R. Sublet to Sundial<br><br><br>S. Sublet to Sundial<br><br><br>T. Sat dish and cable not sealed...<br><br><br>U. Sublet to Sundial.<br><br>Y. ...fan motor ... bad...replaced the motor...<br>Z. ...Found to have a broken wire.<br>AA. Note for file | RO# 38623 (Cont.) |

A 00007

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 7

| 7-7-04 to 8-24-04 | 14,493 | A-C. Estimate damage to passenger side, front bumper, along entry door, to tailpipe; driver's side storage door area; driver's side rear cap(Done when **fuel leak caused owner to leave road in emergency.**) | A. Door panels fabricate...R&R last 2 comp doors and re-skinned, repaired P/S rear fender and 2 comps in front and painted as marked and repaired to P/side.<br><br>$6,569.63 | R.O. # 38626 Ex. 17 |
|---|---|---|---|---|
| 10-7-04 to 1-19-05 (105 days, 75 per Clients) | 4,585? | A. **Roof leaking water front to rear, has water stains and damage throughout.**<br>B. Replace all **stained ceiling fabric,** from living room into bedroom.<br>C. Driver's side **bedroom slide out brings water into coach** when closed, and soaks carpet at front side of bed.<br>D. Driver's side L/R **slide out cutting carpet.**<br>E. **Water being stored in ceiling of coach in rains. When braked are applied 1st time after rain, approx. 2 quarts of water come down inside D/S/ w/shield.**<br><br>H. **Still leaking diesel fuel onto Genset exhaust after coach is filled.** | A. Sealant. Remove refer vent cover and fantastic vent cove and clean off all roof sealant from front to back...<br>B. Roof leak. Monaco techs...remove all ceiling fabric, ... new fabric ...entire ceiling...<br>C. Seals not glued and no drip cups. Monaco techs. 6255, 6259 remove awning, checked seals all the way around slide out box. ...<br>D. Black plastic not high enough. Monaco techs 6259 6255 ... adjust ...<br>E. Roof leaks. Monaco techs 6259 6255 took to water bay and found water leak at D/S windshield pillar post. Inspected roof and sealed cell antenna roof line molding, TV antenna... still ... leaking.<br>H. Oil blow-by from generator. Monaco tech 6259 check system. Found bottom of generator wet with oil. | R.O. # 47232 Ex. 18 |
| 10-7-04 to 1-19-05 (105 days) (Cont.) | | O. **Small compartment on Pass side behind rear wheel fills to 3" of water when it rains.** | ...Gen service door could not open due to bolt l welded to frame. ...Excessive blow of oil thru tube. It is hitting gen exhaust. ...Found blow-by tube wet with oil. Determined leak.<br>O. Out of adjustment. Monaco techs 6259 adjust door to fit tight against water seal. | R.O. # 47232 (Cont.) |

A 00008

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 8

| 1-10-05 | 22,223 | One year since date of purchase | **305 days out of service**-per Invoices<br>Roof leaks water: 4 Repair attempts<br>Body leaks water: 4 Repair attempts<br>Diesel fuel leaking: 3 Repair attempts<br>Diesel fuel leaks on exhaust: 3 Repairs | |
| --- | --- | --- | --- | --- |
| 2-8-05<br><br>(6 weeks per Clients) | 25,923 | The Custom Coach Company.<br>1. Rear **Aqua-Hot system** only blows hot air in the bathroom; the bedroom only blows cold air<br>2. The front **Aqua-Hot** has very little air flow, only blow warm at the dash, then shuts off. | 1. Replaced zone 1 pump;<br><br>2. Replaced fan at dash vent;<br><br>Monaco authorized 6 hours time, then refused 16 additional hours requested by The Custom Coach Company. "This is a very complex system which has not been properly engineered and installed. It will require rearranging the supply lines to make the system function properly...We cannot repair the system correctly without an adequate time allowance...." | R.O. #<br>40136<br>Ex. 20 |
| 7-5-05<br><br>(6 weeks per client) | | Penn Diesel Service Co.:<br><br>Provide routine service on customer's heater in vehicle | "Initial inspection of heater showed **burner housing broken. ... Found internal components of burner melted/damaged from unit not being properly seated w/exchanger. ... Cause of internal burner housing damage due to exposure to open flame.**" | R.O. #<br>P75622<br>Ex. 21 |

The Automobile sustained so many repairs for leaks, dings, dents, paint runs, improperly opening and closing side-outs, and leaks from slide-outs, that we are convinced that discovery, if necessary, will disclose that this was an accident damaged Automobile, which it would be Consumer Fraud to sell as new. At the very least, discovery will disclose that the Automobile, offered to victims of a prior Lemon, was a substandard vehicle, and a second Monaco Lemon. Moreover, the repair of the ceiling stains left the ceiling unsightly and substandard for a luxury motor coach. The repair is unacceptable in the trade, according to LazyDays personnel.

**The Holloways Are Further Protected by the Uniform Commercial Code.**

A 00009

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 9

Nearly identical remedies and principles apply under the Uniform Commercial Code warranty provisions, 6 *Del. C.* §§ 6-2-313; 2-314 (or the Florida counterpart) as interpreted by the courts, with the exception that the U.C.C. applies, without question, to all "goods." Moreover, the U.C.C. creates an implied warranty of merchantability running from Monaco and LazyDays to the Holloways, which cannot be waived nor limited to a time shorter than the express written warranty, according to the Magnuson Moss Consumer Warranty Act, 15 *U.S.C.* 2308(a) and (b). *Felde v. Chrysler Credit Corp.*, 580 N.E.2d 191 (Ill. App. 1991).

### The Holloway's are Entitled to Damages, Including the Full Purchase Price.

The damages recoverable and the legal justification for them are summarized on the enclosed "Summary of Damages." Exhibit 25. First among the damages is the full purchase price of the Automobile. "Repurchase" is authorized by 6 *Del. C.* §5003 (a), which states: "...the manufacturer shall either replace the automobile with a comparable new automobile acceptable to the consumer or *repurchase* the automobile from the consumer and *refund to the consumer the full purchase*, including all credits and allowances for any trade-in vehicle; provided, however, that the consumer shall have the unqualified right to decline a replacement automobile and to demand instead a repurchase."

The "full purchase" price of $267,730.00 is stated in the Buyer's Order, Exhibit 4, the Retail Installment Contract, Exhibit 5, and the "Affidavit of Partial Exemption of Motor Vehicle Sold for Licensing in another State," Exhibit 6, all of which were the result of a negotiated settlement of a claim, Exhibit 2, worth more than $267,000, Exhibit 3, but was compromised to the replacement of the 2001 Lemon, plus costs and attorneys fees. Exhibit A to the Settlement Agreement, lists the "Retail" price of the Automobile as $269,131.00, with delivery. Exhibit 2.

The Retail Installment Sales contract provided to Bank America for the financing of the of the transfer of the Automobile to the Holloways gives the value of the trade-in as $148,133.23, while financing an additional 119,596.77 for a total purchase price of $267,730.00. Exhibit 5.

### A Refund of the Purchase Price, Is the Price Stated in the Transfer Papers.

Sheldon & Carter, *Consumer Warranty Law,* Nat. Consumer L. Cntr, (2d ed. 2001 and 204 cum. supp.) at §13.2.8.6 state:

"The refund of the trade-in is the amount actually allowed by the seller, even if claimed not to be accurate, at least in the absence of convincing evidence establishing otherwise. *Strachan v. Ford Motor Co.*, 1997 U.S. Dist. LEXIS 5321 (E.D. Pa. Apr. 17, 1997). Even where the evidence is clear that the recited trade in allowance is inaccurate because of negative equity, policy considerations bar

A 00010

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 10

> any alteration of the recited amount. *Dunaway v. Ford Motor Co.*, 709 N.E. 2d
> 947 (Ohio Com. Pl. 1998). *See also, Strachan v. Ford Motor Co.*, 1997 U.S.
> Dist. LEXIS 5321 (E.D. Pa. Apr. 17, 1997) (N.J. law) (ordering refund without
> regard to negative equity when dealer failed to show actual value of trade-in and
> allegedly inflated value was recorded on the documents); *Dyer v. Quality Car &*
> *Truck Leasing, Inc.*, 1989 WL 214503 (Ohio Ct. App. June 1, 1989 (adopting
> value that dealer placed on trade-in at time of sale, notwithstanding later claim
> that it was inflated to cover negative equity.... Otherwise, courts would
> constantly be called on to go behind the documents, either at the buyers's or the
> seller's behest. The value stated in the contract is the value that should be
> assigned to the trade in, not the private valuation that the dealer may have made
> but that it did not present either to the consumer or to the entity that financed the
> transaction. *Ramirez v. Autosport*, 44 A.2d 1345 (N.J. Supr. 1982); *See also,*
> *Strachan v. Ford Motor Co.*, 1997 U.S. Dist. LEXIS 5321 (E.D. Pa. Apr., 17,
> 1997). It should be awkward for a dealer to insist that the trade-in value was
> inflated to cover negative equity, as the purpose can only be to deceive either the
> consumer or the financing entity. Knowing ,false statements or overvaluation of
> security for the purpose of influencing an action of a federally-insured institution
> is a crime. 18 *U.S.C.* § 1014."

The "full purchase" price is $267,730.00.

## No "Allowance for Use" Is Justified.

Although the Lemon Law permits an "allowance for use," there is no allowance for use
in the present case, because Monaco's manufacturing errors were known, or should have been
known to Monaco at delivery, since the Automobile was driven 3,423 miles from the factory to
its dealer. The manufacturing defects include fuel filler tubes that were too long, resulting in
fuel spillage; welding a bolt that precluded opening the generator for service and adjustment,
resulting in the blow-by of fuel onto the generator exhaust, as found by Monaco techs; all of the
roof screws required resealing, either because it was done wrong at the factory, or it was
involved in an accident before delivery to the Holloways. "[T]he existence of...a statutory
formula still permits a deviation from that formula, as necessary in the exercise of discretion, to
determine a reasonable use deduction, and fashion an appropriate remedy. Such remedy may
include no deduction at all." Sheldon & Carter, *Consumer Warranty Law,* Nat. Consumer L.
Cntr, §13.2.8.7 (2d ed. 2001 and 204 cum. supp.), citing *Cagiva North America, Inc., v. Schenk,*
1995 Conn. Super. LEXIS 2868 (Oct. 10, 1995), *reversed on other grounds*, 680 A.2d 964
(1996); *Ford Motor Co., v. Miller*, 1993 Conn. Super., LEXIS 1574 (June 1, 1993).

## Incidental and Consequential Damages Are Recoverable.

A00011

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 11

The damages recoverable for breach of warranty and the legal justification for them are summarized on the enclosed Summary of Damages, Exhibit 25. In addition to the direct damages such as the purchase price, and finance charges, "incidental and consequential damages" are recoverable under the Uniform Commercial Code. This is true despite warranty language that purports to limit liability for incidental and consequential damages. Since Monaco and LazyDays could not repair the Condition in a reasonable time, the warranty in this case "failed of its essential purpose" within the meaning of 6 *Del. C.* §2-719(2). *Mercedes Benz v. Norman Gershman's Things to Wear, Inc.*, 596 a.2d 1359 and 1362 (Del. Supr., 1989). When a warranty "fails of its essential purpose," all remedies afforded by the Code are available. Thus, despite limiting language to the contrary, all damages permitted by the *U.C.C.* are recoverable. *Id.*

### Prejudgment Interest is a Matter of *Right*, Under Delaware Law.

The authorities requiring a requested award of prejudgment interest are beyond controversy. It is a matter of black letter law, even in breach of warranty cases: "Generally, interest will be allowed even on an unliquidated claim, where the demand is of such nature that the amount is capable of ascertainment by computation, or can be established with reasonable certainty, or determined by reference to well-established market values." Am. Jur. 2d, *Sales* §1134 ("In Action for Breach of Warranty").

The Delaware Supreme Court has long and consistently held:

> "Interest is awarded in Delaware as a ***matter of right and not of judicial discretion***. As a general rule, interest accumulates from the date payment was due the plaintiff, ***because full compensation requires an allowance for the detention of the compensation awarded*** and interest is used as a basis for measuring that allowance. *Metropolitan Mut. Fire Ins. Co. v. Carmen Holding Co.*, Del. Supr., 220 A.2d 778 (1966). *See also, Levien v. Sinclair Oil Corporation*, Del. Ch., 314 A.2d 216 (1973). It should follow, therefore, that the plaintiff is entitled to recover interest from the City for a period preceding the entry of judgment." Emphases added.

*Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 ( Del. 1978) (awarding prejudgment interest and finding that even a municipality is liable for prejudgment interest); *Collins v. Throckmorton*, 425 A.2d 146, 152 (Del. 1980); *Trans World Airlines, Inc. v. Summa Corp.*, 540 A.2d 403 (Del.1988) (Successful plaintiff is entitled to interest on money damages *as a matter of right* from date *liability accrues*.).

In *All Pro Maids, Inc. v. Layton,* 2005 WL 82689, 1 (Del. Ch.), the law of prejudgment interest was recently reviewed, upholding the cited principles: "Delaware courts have held in a

A00012

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 12

number of different contexts that prejudgment interest is awarded as a matter of right."

"The standard commonly applied by the Delaware courts is to award prejudgment interest 'where the type of damages permitted testimony from which the amount of the recovery was calculable, that is, testimony of a pecuniary nature.' *Rollins Environmental, etc. v. WSMW Industries,* Del.Super., 426 A.2d 1363, 1366 (1980)." *Transamerica v. Tevebaugh,* 1987 WL 8670, 3-4 (Del. Super.); *Trans World Airlines, Inc. v. Summa Corp.,* 540 A.2d 403 (Del.1988) (Successful plaintiff is entitled to interest on *money damages* as a matter of right from date liability accrues.)

## Prejudgment Interest Is Calculated From the Date of Purchase.

Prejudgment interest runs from the date the cause of action "accrues." *Trans World Airlines, Inc. v. Summa Corp., supra.* A warranty is considered to have been breached on the date of sale. *6 Del. C.* §6-725(2). Interest is calculated, and will continue to run from the date of purchase, January 10, 2004, as detailed in the Summary of Damages.

## The Prejudgment Interest Rate Is Set as a Matter of Law.

It is beyond controversy that:

"[A] claim for damages is legal, rather than equitable, in nature and therefore the legal interest rate found in 6 *Del. C.* §2301 is the appropriate standard to be applied. 6 *Del. C.* §2301(a) provides that '[w]here there is no expressed contractual rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate....' The appropriate interest rate to be applied to [Plaintiff's] damage award is 5% over the Federal Reserve discount rate applicable on May 20, 1987--the date on which its damages and right to prejudgment interest began to accrue."

*American General Corp. v. Continental Airlines Corp.,* 622 A.2d 1 at 14 (Del. Ch. 1992). *See also, Cumberland Ins. Group v. KCL Enterprises* 2003 WL 22853458, 3 (Del. Super. Ct.) ("According to 6 *Del. C.* §2301(a), 'the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due.'"); *Rollins Envt'l Serv. Inc. v. WSMW Indus. Inc.,* 426 A.2d 1363, 1368 (Del. Super. Ct.1980).

The claim here is violation of the warranty and the Lemon Law, neither of which contains a rate of interest. In this case, the Federal Reserve Discount rate was determined by consulting the website for the U.S. Federal Reserve "historical rates" for the date the action "accrued", at www.federalreserve.gov/releases/h15. The federal discount rate in effect on January 10, 2004 was .99% making the legal rate 5.99%.

Since the claim accrued on the date of purchase, and the rate is provided by law, the calculation of prejudgment interest in the Summary of Damages is correct. Prejudgment interest must be paid with the other damages.

## Damages for Aggravation and Inconvenience Are Justified.

In addition to the purchase price, out-of-pocket expenses, interest, and attorneys' fees, Mr. & Mrs. Holloway are entitled to damages for aggravation and inconvenience. First is the aggravation of obtaining a replacement of a 2001 Lemon, and demonstrating their confidence in Monaco by accepting a replacement after experiencing a dangerous and frightening un-repairable brake failure in a first new motor coach, only to discover that the replacement is worse than the first coach.

There are the times at the fuel pump when the fuel tanks overflowed, no matter how slowly fuel was put in the tanks. There is the agonizingly slow fueling in an attempt to accommodate the defective fuel filling because of the over-flow problem.

There were the several harrowing experiences of seeing a cloud of vaporized, super-heated diesel fuel pluming after the coach on the highway, because the generator was blowing the fuel onto the exhaust pipes. The repeat of this experience after such a dangerous problem is supposedly repaired, is a source of anger as well as aggravation. There were the innumerable hours in the drivers compartment smelling the diesel fuel from overflows or contact with the exhaust as a result of blow-by from the diesel powered generator. The smell is still there!

Then there is the experience of discovering the replacement, new and improved Automobile leaks water from the roof, staining the brand new, perfect appearance of the ceiling fabric, and warping the wood trim, only to have it torn out and reinstalled with unsightly dents, and flaws. There is the experience of discovering water running in from windows and slide-outs, only to be told that seals were not glued, and latches were not holding or were out of adjustment. Then there was the repeated experience of sitting in the driver's seat and driving, then stepping on the brake for the first time after a rain and having two quarts of water run down the inside of the windshield and onto the dash and behind the dash, in this supposedly premium, luxury coach. Then there was the discovery that the water penetration affected gauges like oil pressure, and others that stopped working. Then there was the experience repeated through numerous storage compartments, on numerous occasions, after repeated repairs, of finding water in the storage compartments, sometimes three inches deep, and resulting mildew smell, and ruined carpet.

Dealing with Monaco had its own aggravations. First, even before the Holloways could pick it up after transfer to them, the Automobile needed innumerable corrections, especially to the body. Then it had to be left for such long times for each repair: 30 days, 36 days, 76 days, either 75 or 105 days, only to be redelivered with shoddy workmanship, unrepaired problems,

A00014

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 14

etc. It is not as if the problems the Holloways reported were insubstantial or non-existent.
Monaco techs report finding all of the problems, leaking fuel, leaking water, leaking roof, burned
out switches, ill fitting slide-outs, and on and on. Eventually, Monaco stopped responding to the
Holloways. Then when the problems crescendoed with the return of the Automobile with the
shoddy ceiling replacement, the Holloways demanded a refund and were sent a terse note saying
Monaco would repurchase, if the Holloways would take less than half what they were owed.

Even after that, the Hydro-Hot was discovered to be so badly misaligned that it burned
itself up, as a result of apparent faulty installation at the factory. No help from Monaco!
Monaco would not pay an independent to do the work to discover the serious, dangerous
problem. The Holloways later paid $1,200 to have the problem addressed, with a rebuilt unit.
Finally, there is the aggravation and inconvenience of having to fly, at their own expense to drop
off and pick up the Automobile, to do so often, and get back a vehicle that is unrepaired, or
shoddily repaired.

If they hear this experience, a jury, already skeptical of vehicle sales and service, will
undoubtedly award substantial damages for aggravation and inconvenience.

## Damages Are Subject to Trebling.

Note well that damages in this case will be tripled. Mrs. Holloway was over the age of
65 when the Lemon Law was violated. She was 65 on June 2, 2005. Violation of the Lemon
Law is Consumer Fraud, as a matter of law, pursuant to 6 *Del. C.* §5509. ("In addition to any
remedies the consumer may have at law or in equity, a violation of this chapter shall be an
unlawful practice as defined in § 2513 of this title.") Mrs. Holloway's damages "shall" be
trebled, and attorneys fees awarded for her efforts in enforcing her rights under the Consumer
Fraud Act, since it i.e. contained in Chapter 25 of Title 6.

The Elder Victims Enhance Penalties Act, 6 *Del. C.* §2583 provides:

### "§ 2583  Cause of action; enhanced penalties.

(a) An elder or disabled person who suffers damage or injury as a result of an
offense or violation described in this *chapter* [Chapter 25] has a cause of action to
recover actual damages, court costs and reasonable attorney's fees.

(b) If a private cause of action is brought by the victim of a violation of this
subchapter, [subchapter II] and said victim was *65 years of age or older* or a
disabled person when the violation occurred, *the victim shall be entitled to*
*recover 3 times the amount of the victim's compensatory damages* if a violation of
this subchapter is established. Such treble damages shall be in addition to any

A00015

Cyndi Edgett
Monaco Coach
August 16, 2005
Page 15

> other damages to which the victim is entitled pursuant to common law or other
> provisions of the Delaware Code." Emphases added.

### Conclusion

Please contact me within two weeks to resolve this matter. If the matter is not then
resolved, the enclosed Complaint, Exhibit 1 will be filed in Superior Court. The damages will
only increase as attorney's fees climb, and prejudgment interest mounts.

This letter is for settlement purposes only. Nothing in this letter shall be deemed to be an
admission for any purpose.

Very truly yours,

Christopher J. Curtin

cc: Mr. & Mrs. Douglas R. Holloway
#3296
Enclosures

A00016

# 2001 COACH

## 2. Settlement Agreement for 2001 Coach

A00017

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS

This Settlement Agreement and Mutual Release of all claims, (hereinafter "Agreement"), is entered into by and between Douglas Holloway and Rita Holloway, husband and wife, (hereinafter "Claimant"), and Beaver Motor Coaches, an unincorporated division of Monaco Coach Corporation, Magnum Chassis, an unincorporated division of Monaco Coach Corporation and Monaco Coach Corporation, a Delaware Corporation with offices in Wakarusa, Indiana (hereinafter collectively referred to as "Monaco), and Stoltzfus Trailer Sales, Inc. (hereinafter "Dealer"), which hereinafter shall be referred to as "the parties hereto."

1.    RECITALS.

   1.1   Whereas, Claimant filed a lawsuit now pending in the United States District Court for the District of Delaware at CV-03-095-SLR, contending that Monaco failed to conform the 2001 36' Monterey Motorhome, VIN 4SLB1DP2511114401, (hereinafter "2001 Motorhome") to the terms and conditions of its Limited Warranty after being given a reasonable opportunity to do so in breach of express and implied warranties and in violation of Delaware's Lemon Law; and,

   1.2   Whereas, Monaco and Dealer have at all times denied, and continue to deny the allegations made by the Claimant; and,

   1.3   Whereas, the parties hereto desire to resolve the lawsuit as described above and all other matters and disputes between them, whether known or unknown, and effect a final resolution of such claims as more fully set forth in this Agreement.

2.    SETTLEMENT.

   2.1   Payment and other Consideration.    Therefore, for good and valuable consideration, the value and sufficiency of which are hereby acknowledged, and in further consideration of the mutual releases and promises contained in this Agreement, the parties hereto agree as hereinafter described:

      (a)   Claimant shall surrender, free and clear of all liens and encumbrances the 2001 Motorhome, in good condition, reasonable wear and tear and alleged defects excluded, to Monaco designated representative, Stoltzfus Trailer Sales Inc., located in Pennsylvania on February 16, 2004;

1

A00018

(b)    Claimant agrees to sign a Power of Attorney for the purpose of assigning to Monaco free and clear title to the 2001 Motorhome.

(c)    Prior to surrendering possession of the 2001 Motorhome to Monaco, Claimant shall remove all personal items from the 2001 Motorhome;

(d)    Monaco shall deliver and transfer possession and Claimant shall take possession of a new 2004 Monterey 40' Laguna FD QSL Motorhome, with the optional equipment identified by Exhibit "A" (hereinafter the "2004 Motorhome");

(e)    Delivery and transfer of the 2004 Motorhome shall take place at Lazy Days in Florida on or about March 1, 2004;

(f)    In addition to the factory optional equipment identified by Exhibit "A", Monaco agrees to pay Lazy Days to install the after market options identified by Exhibit "B";

(g)    On the date of delivery and transfer of the 2004 Motorhome, Monaco shall deliver and convey to Claimant and/or to the Claimant's lien holder the Certificate of Origin for the new 2004 Motorhome, which shall be free and clear of all liens and encumbrances;

(h)    Prior to delivering and transferring possession of the 2004 Motorhome to Claimant, Claimant shall assist Monaco in obtaining from Claimant's lender, a substitution of collateral agreement for the purpose of removing any lien off the title to 2001 Motorhome and placing the lien, if any, on the title to the new 2004 Motorhome;

(i)    Claimant agrees to cancel the service contract covering the 2001 Motorhome and to pay any refund of the cost of the service contract to Monaco;

(j)    Monaco agrees to purchase for the Claimants benefit a [illegible] year extended warranty/ service contract covering the 2004 Motorhome;

(k)    Monaco agrees to be solely responsible for any sales taxes owed as a result of the exchange of Motorhomes, if any;

2

(l)    Monaco agrees to be solely responsible for all licensing and registration expenses relating to the 2004 Motorhome;

(m)    Claimant's warranty rights arising out of their receipt of the new 2004 Motorhome shall be exclusively governed by the laws expressly provided in the warranty documents, including but not limited to Monaco's Limited Warranty and any and all component part and appliance manufacturers' Limited Warranties.

(n)    Claimant agrees to assist, cooperate and participate in the prosecution of any claims brought by Monaco Coach Corporation against any entity deemed, in Monaco's exclusive judgment, to be in anyway responsible for damages, fees or costs incurred by Monaco as a result of the circumstance surrounding the claim venued at CV-03-095-SLR.

(o)    Monaco shall pay Claimants' counsel fees in the amounts stated in Claimants' attorney's letter to Monaco's counsel, dated January 26, 2004, and attached hereto as Exhibit "C." Counsel fees shall be paid to claimants' attorney upon receipt of the executed Agreement by counsel for Monaco.

3.    MUTUAL RELEASE.

Release.    In further consideration of the agreement and covenants contained in Section 2 hereof, Claimant hereby releases and forever discharges Monaco and Dealer of all claims of any nature whatsoever, including but not limited to, any claims of any nature arising out of or related to the 2001 Motorhome. Claimant further agrees, upon receipt of the 2004 Motorhome to dismiss, with prejudice, the lawsuit before the United States District Court for the District of Delaware at CV-03-095-SLR.

4.    DISPUTED CLAIMS.

It is understood and agreed that this Agreement is a compromise of disputed claims, and shall not be construed as an admission by the Parties, or any of them, of a violation of any state, federal or local statute, ordinance, rule, regulation, order, policy or other law, or as an admission of liability for breach of warranty/contract or for a tort. The parties hereto expressly deny any liability towards each other. Moreover, neither this Agreement nor anything in this Agreement shall be construed to be or shall be admissible in any proceeding as evidence of any admission by any of the parties hereto of a violation of any state, federal or local statute, ordinance, rule, regulation, order, policy of other law, or as an admission

3

A00020

of liability. This Agreement may be introduced in any proceeding to enforce it however.

5.    MISCELLANEOUS.

5.1    Representation Regarding Assignment.    The parties hereto represent and warrant that they have not heretofore assigned or transferred or purported to assign or transfer to any person or entity, any claim, cause of action, or any other matter herein released. The parties hereto agree to indemnify and hold each other harmless against any claim, including attorney fees actually paid or incurred, arising out of or in any way connected with any such transfer or assignment or any such purported or claimed transfer or assignment.

5.2    Counterparts.    This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

5.3    Governing Law.    The Agreement shall be construed in accordance with, and be governed by, the laws of the jurisdiction as determined by the Court.

5.4    Benefit and Burden.    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

5.5    Entire Agreement. The parties hereto each acknowledge and represent that no promise or representation not contained in this Agreement has been made to any of them and acknowledge and represent that this Agreement contains the entire understanding between and among the parties and contains all terms and conditions pertaining to the resolution of all matters between and among them. No element of this Agreement shall be enforceable until executed by all parties hereto. No discussion draft of this Agreement that has not been executed by all parties, which was prepared in negotiations between and among the parties hereto, shall be admissible in any proceeding to interpret the intent of any party as expressed by this Agreement.

5.6    Drafting.    This Agreement is to be interpreted without regard to the draftsman. The terms and intent of this Agreement with respect to the rights and obligations of all parties identified in this Agreement shall be interpreted and construed on the express assumption that all parties participated equally in its drafting.

5.7    Captions and Interpretations.    Paragraphs, titles and captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision thereof.

4

A00021

5.8    Waiver and Amendment.    No breach of any provision hereof can be waived unless in writing. Waiving of any one breach of any provision hereof shall not be deemed a waiver of any other breach of the same or any other provision hereof. This Agreement may be amended only by a written agreement executed by the parties in interest at the time of the modification.

5.9    Attorney's Fees.    If any court proceeding is commenced to enforce the rights of any party of this Agreement, the court with jurisdiction of the matter, shall have the power to award reasonable attorney fees and costs to the prevailing party.

5.10    Independent Advice of Counsel.    The parties hereto, and each of them, represent and declare that in executing this Agreement, they rely solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independent selected legal counsel, concerning the nature, extent and duration of their rights and claims, and that they have not been influenced to any extent whatsoever in executing this Agreement by any of the parties hereto or by any person representing them, or any of them.

5.11    Voluntary Agreement.    The parties hereto, and each of them, further represent and declare they carefully read this Agreement and know the contents thereof, and that they sign the same freely and voluntarily.

5.12    Partial Invalidity.    Should any provision of this Agreement be held illegal or unenforceable in a final judgment of any arbitrator(s) or court of competent jurisdiction as to the parties bound by such judgment, such provision shall be deemed severed from this Agreement, and the remainder of this Agreement shall be considered in full force and effect.

5.13    Authority to Sign.    The signatories on behalf of the parties warranty and represent that they have authority to enter into this Settlement Agreement and Mutual Release and to bind the respective party on whose behalf the signatory acts.

We have read the foregoing Settlement Agreement and Mutual Release of All Claims, and we accept and agree to the provisions contained therein and execute it voluntarily with full understanding of its consequences.

IN WITNESS WHEREOF, representatives of the undersigned parties have signed this Agreement as of the date or dates hereinafter appearing.

Douglas Holloway

Date    2/16/04

5

A 00022

_Rita Holloway_     2-16-04

Rita Holloway               Date

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**Stoltzfus Trailer Sales, Inc.**

_Earl Stoltzfus_  Pres.     2-16-04

Earl Stoltzfus              Date


**Monaco Coach Corporation**

By: _Bob Harlan_     2/12/04

~~T. Michael Pangburn, Corporate Counsel~~     Date

Bob HARlan, Monaco Coach Corp.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

6

A00023